# UNITED STATES DISTRICT COURT

# SOUTHERN DISTRICT OF GEORGIA

# SAVANNAH DIVISION

UNITED STATES OF AMERICA,      )
                               )
    Plaintiff,                 )
                               )
v.                             )        CR416-265
                               )
AARON PORTER,                  )
                               )
    Defendant.                 )

## REPORT AND RECOMMENDATION

In this felon-in-possession-of-a-firearm case, defendant Aaron Porter moves to suppress the pistol discovered by the police when they conducted a warrantless seizure and search of his person. Doc. 27. Porter contends that the police lacked reasonable suspicion to believe that he had committed any crime, so his initial seizure violated the Fourth Amendment, and thus all evidence acquired as a result of that violation must be excluded. *Id.* On December 14, 2016, the Court heard testimony and oral argument on the motion. The evidence adduced at that hearing fails to support Porter's contentions.

## I.   FACTS

At around 10:00 p.m. on March 17, 2016 (St. Patrick's Day),

various 911 callers reported that a shooting had just occurred in a parking lot at Simon F. Frazier Homes, a public housing complex in Savannah, Georgia, near the intersection of Anderson Street and Martin Luther King, Jr. Boulevard (MLK). Minutes later, several Savannah-Chatham Metropolitan Police Department (SCMPD) officers, deployed in the area for the holiday festivities, responded to the scene of the shooting. Corporal Trevor Kruwel, the first officer to arrive, parked his marked police car on Anderson Street, after being waved down by several witnesses. As additional officers arrived, including Officer Timothy McNeeley, more marked police cars parked along Anderson Street.

Detective John Smith, an 11-year veteran of the SCMPD, was alerted to the shooting by radio broadcasts stating that two suspects wearing ski masks had fled northbound after the shooting. In plain clothes and in an unmarked car, he took a position north of the intersection of Anderson Street and MLK. He chose his position because, based on his previous experience patrolling the area, it would allow him to watch a route commonly used by those endeavoring to avoid any police

presence at Frazier Homes.[1] Shortly after marked units arrived at Anderson Street, Det. Smith observed an individual (later identified as Porter) moving through the shadows approaching MLK. Porter paused, keeping to the shadows, and looked both ways along MLK as though scanning to ensure he would not be observed. He then broke cover, rapidly crossed MLK, and continued walking quickly down Duffy Lane, an alley.

Since he viewed Porter's behavior as suspicious, Det. Smith broadcast a description to units in the area. Gov't Ex. 1(a) at 13:43-13:54. He reported an individual wearing a "bucket hat . . ., blue jean shorts, [and a] dark colored jacket" that appeared to have "a white C on the back possibly." *Id.* at 14:25-14:29. In response to Det. Smith's description, Officer McNeeley asked a witness whether the shooter's clothes had "a white letter on it [sic]." Gov't Ex. 2(a) at 4:03. The witness confirmed that she thought there was a white letter on the

---

[1] Det. Smith, who has long patrolled this downtown area of Savannah, testified that shootings and narcotics sales are a frequent occurrence in Frazier Homes. He further testified that it is commonplace for individuals who have been banned from entering the public housing complex to leave the area whenever the police arrive.

suspect's clothes.[2]  *Id.* at 4:09-4:10.  She also volunteered that the suspect was "real short," approximately five feet four inches tall.  *Id.* at 4:11-4:13.

Based on the information from the witness, Officer McNeeley radioed to Det. Smith and asked whether the individual he observed was short.  Gov't Ex. 1(a) at 14:48.  Det. Smith responded that he "[s]eem[ed] to be about five ten, five eleven."  *Id.* at 14:54-55.  Officer McNeeley then broadcast the witness' confirmation that the shooter did "have a white letter on his clothing."  *Id.* at 14:57-15:00.  Det. Smith replied that Porter had gone into a convenience store.  *Id.* at 15:07-15:14.

Other officers proceeded to the store and waited for Porter to exit.  When he did so, an officer put his hand on Porter's elbow and said "What's up big guy."  Gov't Ex. 2(c) at 0:47.  Porter greeted the officer and attempted to continue walking, but the officer held the sleeve of his jacket.  *Id.* at 0:47-0:48.  The officer asked Porter if he "came from Frazier," and he responded "no sir."  *Id.* at 0:50-0:52.  The officer

---

[2]  The video recording of the witness' statement is not completely clear.  In response to Officer McNeeley's question, "did [the suspect's] clothes . . . have a white letter on [them]," she responds "Yeah, he got some white [inaudible] on it, I think."  At the hearing, Officer McNeeley testified that the witness confirmed that the shooter had white lettering on the back of his clothes.

4

inquired whether he was "coming down Duffy Lane," and Porter responded "no sir." *Id.* at 0:53-0:55.[3]  Finally, the officer said "gimme one second, do you have any weapons on you?"  *Id.* at 0:57.  As soon as the officer asked about weapons, Porter tried to flee.  *Id.* at 0:57-0:58.  He didn't get far, for the officers immediately wrestled him to the ground. After Porter was handcuffed, he admitted that he had a weapon. *Id.* at 0:58-1:30.  A search of his person turned up the .357 magnum pistol which is the basis of the current charge.  Doc. 27 at 7.

## II.  ANALYSIS

The Fourth Amendment protects citizens against unreasonable searches and seizures by police.  U.S. Const. amend. IV.  It is clear that Porter was "seized," for Fourth Amendment purposes, when the officer grabbed his elbow.  *See Terry v. Ohio*, 392 U.S. 1, 16 (1968) ("It must be recognized that whenever a police officer accosts an individual and restrains his freedom to walk away, he has 'seized' that person."); *California v. Hodari D.*, 499 U.S. 621, 626 (1991) ("The word 'seizure'

---

[3]  The Government points out that Porter's responses were not true.  Doc. 30 at 5. However, since Porter had already been seized, as discussed below, those falsehoods are not relevant to whether the officers had reasonable suspicion for their *initial* stop (though they are relevant in gauging the lawfulness of the officers' continued seizure and ultimate search of defendant's person).

5

readily bears the meaning of a laying on of hands or application of physical force to restrain movement . . .").  Porter argues that because his seizure was illegal, the Court must suppress the firearm and any other evidence derived from the improper stop.  *See* doc. 27 at 12; *see also United States v. Jordan*, 635 F.3d 1181, 1185 (11th Cir. 2011) ("Evidence obtained in violation of the Fourth Amendment must be suppressed.")

Brief investigatory seizures do not violate the Fourth Amendment when they are based on an officer's "reasonable, articulable suspicion that criminal activity is afoot." *Illinois v. Wardlow*, 528 U.S. 119, 123 (2000) (citing *Terry*, 392 U.S. at 30).  Reasonable suspicion "requires at least a minimal level of objective justification for making the stop." *Id.* (citing *United States v. Sokolow*, 490 U.S. at 1, 7 (1989)).  The existence of reasonable suspicion "should be determined from the totality of the circumstances and . . . the 'collective knowledge' of all the officers involved in the stop." *United States v. Cotton*, 721 F.2d 350, 352 (11th Cir. 1983).

Porter first came to the SCMPD's attention because he was behaving in a way that indicated he was trying to avoid the marked units arriving on Anderson Street.  A suspect's travel by a route commonly

used to avoid law enforcement can be a basis for reasonable suspicion. *See United States v. Arvizu*, 534 U.S. 266, 277 (2002) (mentioning defendant's presence on "a little-traveled route used by smugglers to avoid . . . [an established] checkpoint" in finding reasonable suspicion for traffic stop). Porter argues that the manner of his departure from Frazier Homes was not suspicious because everything he did was susceptible to an innocent interpretation. Doc. 27 at 10. Reasonable suspicion, however, is not precluded merely because, considered separately, all of a suspect's behavior could be viewed as innocent. *See Arvizu*, 534 U.S. at 274-5 (rejecting "divide-and-conquer analysis" of reasonable suspicion under which "each observation . . . that was by itself readily susceptible to an innocent explanation was entitled to 'no weight.'"); *United States v. Acosta*, 363 F.3d 1141, 1145 (11th Cir. 2004) ("[A] reasonable suspicion of criminal activity may be formed by observing exclusively legal activity.") (quotes and cite omitted). Det. Smith was entitled to draw on his training and experience to determine whether Porter's potentially innocent conduct was, viewed as a whole, suspicious. *Arvizu*, 534 U.S. at 276 (officer is "entitled to make an assessment of the situation in light of his specialized training and

familiarity with the customs of the area's inhabitants," in interpreting suspect's conduct). Det. Smith's observations, therefore, are properly considered in determining whether the officers had reasonable grounds to suspect that Porter was involved in criminal activity.

Even if Det. Smith's observations did not, standing alone, create reasonable suspicion, they were not the only facts the officers relied upon in deciding to stop Porter. Officer McNeeley confirmed that Det. Smith's description of Porter matched the shooter's, in at least one respect.[4] That confirmation provided important additional support for the officers' suspicion. *See United States v. Edwards*, 469 F.2d 1362, 1365 (5th Cir. 1972) (fact that suspect was wearing "a distinctive item of apparel

---

[4] Porter argues that the fact that the witness described the shooter as particularly short (approximately five feet four inches tall), when Det. Smith described Porter as five feet ten to five feet eleven inches tall, should have excluded Porter from further police attention. *See* doc. 27 at 9-10. But as Officer McNeeley testified, it is not uncommon for witnesses who have just been in a stressful situation to furnish information that does not turn out to be completely accurate. Even where there are "minor inconsistencies involving mutable characteristics," police may still have reasonable suspicion to stop an individual matching a suspect's description in other respects. *See United States v. Davis*, 235 F.3d 584, 587-8 (D.C. Cir. 2000); *see also United States v. McDonald*, 211 F. App'x 222, 225 (4th Cir. 2007) (officers had reasonable suspicion for a brief traffic stop "[a]lthough there were discrepancies between the description given [by the victim] and [the defendant's] actual appearance, [where the officer] testified that victims who have undergone life-threatening experiences may confuse details about their assailants"). The discrepancy between the witness' description of the shooter's height and Porter's actual stature, therefore, is not alone sufficient to preclude reasonable suspicion.

described by one of the victims," supported reasonable suspicion).

The sum of the information available to the officers when they decided to stop Porter gave them reasonable suspicion that he was engaged in criminal activity.[5] Some twelve minutes after the first 911 call, and relatively near to where the shooting occurred, Det. Smith

---

[5] At the hearing, and with Porter's consent, the Government raised an additional basis for the officers' reasonable suspicion -- his violation of a City of Savannah ordinance prohibiting the use of city lanes as thoroughfares (except for certain enumerated purposes not applicable here). *See* Savannah, Ga., Code § 4-1010 (1977). Det. Smith's testimony established that Porter violated this ordinance by cutting down Duffy Lane after he crossed MLK. Defendant argues that the ordinance violation cannot show reasonable suspicion because it was not invoked until after he moved to suppress, and long after his arrest. The fact that the ordinance violation was not mentioned at the time, he contends, shows that it is a pretext to justify an otherwise illegal seizure. But an officer's subjective reason for making a stop need not be the criminal activity for which the objective facts furnish reasonable suspicion. In other words, "if a police officer makes a temporary detention on one basis, later determined to be insufficient, the stop may be upheld on another basis shown by the facts known to the officer." 1 Wayne R. Lafave, SEARCH & SEIZURE § 1.4(d) n. 30 (5th ed. 2012); *see Devenpeck v. Alford*, 543 U.S. 146, 153 (2004) (an arrest is proper if there are objective facts establishing probable cause for arrest, even if the arresting officer stated that he was arresting the defendant for another offense for which he lacked probable cause); *Lee v. Ferraro*, 284 F.3d 1188, 1196 (11th Cir. 2002) ("[W]hen an officer makes an arrest, which is properly supported by probable cause to arrest for a certain offense, neither his subjective reliance on an offense for which no probable cause exists nor his verbal announcement of the wrong offense vitiates the arrest."); *see also United States v. Lopez-Moreno*, 420 F.3d 420, 431-2 (5th Cir. 2005) (citing, *inter alia, Devenpeck*) (rejecting argument that traffic violation could not support reasonable suspicion for stop because it was "post hoc rationalization," because "an officer's subjective motivations are irrelevant in determining whether his or her conduct violated the Fourth Amendment"). Officers thus had reasonable suspicion to stop Porter and determine whether he had any legitimate purpose on Duffy Lane, regardless of their actual, subjective reason for conducting the stop. Since they had reasonable suspicion to stop him, Porter's subsequent attempt to flee, as discussed below, provided sufficient grounds to arrest him and conduct a search incident to that arrest.

observed Porter behaving in a manner that he properly judged to be suspicious in light of his experience. Even if there had been no report of a shooting or flashing blue lights just down the street, such furtive behavior (hiding in the shadows, not crossing the street until the coast was clear, and avoiding main streets in favor of alleys) would naturally draw the interest of a police officer on patrol in such a high-crime area. Once the witness confirmed that the jacket Porter was wearing matched clothing worn by the shooter, the totality of the circumstances gave the officers reasonable suspicion sufficient to stop him for questioning.

The officers' reasonable suspicion to stop Porter very quickly elevated into the realm of probable cause to effect his arrest. Porter's attempt to flee from a lawful stop violated O.C.G.A. § 16-10-24. *See United States v. Foskey*, 455 F. App'x 884, 888 (11th Cir. 2012) (concluding that defendant's flight from a lawful *Terry* stop violated O.C.G.A. § 16-10-24, so his subsequent apprehension and arrest did not offend the Fourth Amendment). The officers, therefore, had authority to arrest Porter and conduct a search incident to that arrest. *See Preston v. United States*. 376 U.S. 364, 367 (1964) ("Unquestionably, when a person is lawfully arrested, the police have the right without a search warrant,

to make a contemporaneous search of the person of the accused for weapons or for the fruits or implements used to commit the crime."). Accordingly the search of Porter's person did not violate the Fourth Amendment.

## III.  CONCLUSION

Viewing the totality of the circumstances, the Court finds that neither the original stop nor the subsequent search violated the Fourth Amendment.  Accordingly, Aaron Porter's motion to suppress should be **DENIED**.  Doc. 27.

This Report and Recommendation (R&R) is submitted to the district judge assigned to this action, pursuant to 28 U.S.C. § 636(b)(1)(B) and this Court's Local Rule 72.3.  Within 14 days of service, any party may file written objections to this R&R with the Court and serve a copy on all parties.  The document should be captioned "Objections to Magistrate Judge's Report and Recommendations."  Any requests for additional time to file objections should be filed with the Clerk for consideration by the assigned district judge.

After the objections period has ended, the Clerk shall submit this R&R together with any objections to the assigned district judge.  The

district judge will review the magistrate judge's findings and recommendations pursuant to 28 U.S.C. § 636(b)(1)(C). The parties are advised that failure to timely file objections will result in the waiver of rights on appeal. 11th Cir. R. 3-1; *see Symonett v. V.A. Leasing Corp.*, 648 F. App'x 787, 790 (11th Cir. 2016); *Mitchell v. U.S.*, 612 F. App'x 542, 545 (11th Cir. 2015).

**SO REPORTED AND RECOMMENDED,** this 23rd day of December, 2016.

UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA